# Hyslip & Taylor
### LLC, LPA

David M. Menditto, Esq.*
312-854-1616
davidm@fairdebt411.com

October 10, 2015

Honorable Leonard D. Wexler
United States District Court, Eastern District of New York
944 Federal Plaza
Central Islip, New York 11722

Re:  *Telephone Science Corporation v. Credit Management, LP* (No. 15-cv-4122-LDW-ARL)

Dear Judge Wexler:

This letter is submitted on behalf of Plaintiff, Telephone Science Corporation ("TSC"), in response to the request of Defendant, Credit Management, LP ("CM"), for a pre-motion conference in anticipation that CM will be filing a motion to dismiss TSC's first amended complaint. TSC intends to oppose those anticipated motions for the reasons set forth herein.

### A.   The Nature of TSC's Business and the Nomorobo Service It Provides to Consumers

TSC operates "Nomorobo," a service designed to help consumers avoid incoming computerized telephone calls that the Federal Trade Commission ("FTC") refers to as "robocalls." There is no denying that TSC serves a public good. It works with the government to combat illegal robocalls and helps thousands of consumers to avoid such calls *for free*.[1] In order to gather the information TCS needs to optimize its Nomorobo service, it makes good sense that TSC would go where the robocallers are. This means purchasing thousands of telephone numbers, many of which are considered "dirty" numbers that receive a high volume of calls (including thousands of non-robocalls).

Contrary to CM's assertion, TSC is not "an entity that essentially buys litigation under the TCPA." TSC was formed in 2013 and initially funded, in part, by the $25,000 award its founder, Aaron Foss, received after winning the FTC's inaugural "Robocall Challenge." TSC also has investors and provides its Nomorobo service to businesses for a fee. To date, only one TCPA lawsuit filed by TSC against a robocaller has been resolved.[2] Given this, it is irresponsible to suggest that TSC "essentially buys litigation." TSC's primary function has always been, and continues to be, helping consumers and businesses to avoid unwanted robocalls.

---

[1] For some reason, CM feels the need to question whether TSC's business in fact has the support of governmental agencies. TSC offers that background simply for context. TSC's claims are not dependent on whether the government supports TSC's business or this litigation.
[2] In *Telephone Science Corporation v. Trading Advantage, LLC*, Case No. 14-cv-04369 (N.D. Ill., filed June 12, 2014), the parties stipulated to dismiss the case with prejudice shortly after the Court denied the defendants' motion to dismiss.

Honorable Leonard D. Wexler
October 10, 2015
Page 2

B.     **The Nature of a Robocaller and the Prohibitions of the TCPA**

The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, is a strict liability statute that focuses on the conduct of the *caller*, not the called party. The potential liability a robocaller faces for violating the TCPA is significant – $500 to $1,500 *per violation*. *See* 47 U.S.C. § 227(b)(3). By making the practice of repeatedly violating the statute prohibitively expensive, the TCPA serves its intended goal of deterrence and provides an incentive for private enforcement of the law. *See Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008). To help robocallers avoid significant liability under the TCPA, courts admonish them to place "intermittent live calls" to each number they are calling and verify that the current subscriber has consented to be called. *See, e.g., Sterling v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 186432, *8 (W.D.N.Y. Nov. 22, 2013). Many robocallers, however, ignore this sound advice and continue to use a more cost-efficient autodialer technology. CM's choice to place robocalls to TSC numbers without first verifying whether it had "express consent" was a purposeful and calculated business decision for which CM is solely responsible.

C.     **TSC's out-of-pocket expenses suffice to confer Article III standing on the Court.**

A *nominal* "injury-in-fact" traceable to the defendant's alleged misconduct is sufficient to confer Article III jurisdiction upon a federal court. According to the Supreme Court, "an identifiable trifle is enough for standing to fight out a question of principle; *the trifle is the basis for standing and the principle supplies the motivation*." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405 (1973) (emphasis added); *see also In re. Methyl Teriary Butyl Ether Prods. Liab. Litig.*, 725 F.3d 65, 105 (2nd Cir. 2013). Out-of-pocket expenses incurred by a plaintiff qualify as an "injury-in-fact" sufficient to establish Article III standing. *Doe v Chao*, 540 U.S., 614, 627 n.12, 124 S. Ct. 1204, 1212 n.12.

In this case, TSC incurred out-of-pocket expenses in the form of per-minute charges as a direct and proximate result of the calls it received from CM. While an out-of-pocket expense may be incurred as part of a for-profit business operation, *the expense itself is not a benefit*. Any expense, however slight, is something that depletes a business's resources and constitutes an "injury-in-fact" when caused by the defendant's wrongful misconduct. TSC's "trifle" of injury in this case is sufficient to confer Article III jurisdiction upon the Court.

D.     **TSC is within the "zone of interests" the TCPA is intended to protect.**

The TCPA empowers private individuals *and entities*, like TSC, to act as "private attorneys general to pursue claims for well defined statutory damages." *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 2015 U.S. App. LEXIS 14718, *7 (1st Cir. Aug. 21, 2015). It does not matter whether a plaintiff actively seeks out opportunities to bring TCPA claims or is motivated by "financial gain rather than selfless consumer advocacy." *Charvat v. Travel Servs.*, 2015 U.S. Dist. LEXIS 81770, *10-11 (N.D. Ill. June 24, 2015) A called party has no obligation to avoid illegal robocalls before filing a lawsuit based on the defendant's knowing violation of the statute. *Fitzhenry v. ADT Corporation*, 2014 U.S. Dist. LEXIS 166243, *12 (S.D. Fla. Nov. 3, 2014). Where Congress has empowered individuals and entities to act as "private attorneys

general" to enforce a statute that addresses a public good, those individuals and entities fall within the "zone of interests" the statute is designed to protect. *Bennett v. Spear*, 520 U.S. 154, 175, 117 S. Ct. 1154, 1167-68 (1997) (Scalia, J., for unanimous Court).

"'[T]he mere fact that a [plaintiff's] own decisions played a role in its [injury] does not obviate the causal connection between the defendants' conduct and the plaintiff's injury'…***Rather, an injury is self-inflicted only if it is so 'completely due to the [complainant's] own fault as to break the causal chain.'***" *Procaps S.A. v. Pathon Inc.* 2014 U.S. Dist. LEXIS 10874, *17-20 (S.D. Fla. Jan. 29, 2014) (emphasis added) (citations omitted). CM cannot escape the fact that it would not face a single dollar of potential liability in this case if it had not placed robocalls to TSC numbers without first verifying whether it had "express consent" to call those numbers. CM's "self-inflicted injury" argument, therefore, is misplaced.

**E.     New York Judicial Law § 489 does not apply to TSC's claim against CM.**

New York Judicial Law, Section 489, entitled "Purchase of claims by corporations or collection agencies" merely prohibits a corporation from "solicit[ing], buy[ing], or tak[ing] an assignment of… a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon." N.Y. Judiciary Law § 489. In the instant case, TSC's claims against CM are based entirely on CM's robocalls to telephone numbers for which TSC was the subscriber in violation of the TCPA. TSC has not bought or taken by assignment any claim, demand, or other thing in action belonging to any other individual. Section 489, therefore, is inapplicable.

**F.     Section 227(b)(1)(A)(iii) of the TCPA applies to individuals and businesses.**

Section 227(b)(1) of the TCPA sets forth four (4) prohibitions for which a "person ***or entity***" is empowered to bring a private action against a defendant that violates the statute. *See* 47 U.S.C. § 227(b)(3) (emphasis added). Only two of the sections in which those prohibitions are stated specifically refer to a "residential" or "business" line. The other two sections refer to a call to "***any*** telephone number," 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), and "***a*** telephone facsimile machine," 47 U.S.C. § 227(b)(1)(D) (emphasis added). If Congress wanted to limit either of these two (2) subsections to apply only to consumers or businesses, it could have done so. Yet it did not. CM's argument that Section 227(b)(1)(A)(iii) only applies to individual consumers is belied by the language of the statute and has been repeatedly rejected by courts. *See Telephone Science Corporation v. Trading Advantage, LLC*, 2015 U.S. Dist. LEXIS 18591 (N.D. Ill. Feb. 17, 2015); *Warnick v. Dish Network, LLC*, 2014 U.S. Dist. LEXIS 138381 (D. Colo. Sep. 30, 2014).

TSC and its counsel thank the Court for its consideration of TSC's positions.

Respectfully submitted,

David M. Menditto
Christopher P. McDonnell