**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
**CENTRAL ISLIP DIVISION**
-----------------------------------------------------X

Telephone Science Corporation,                    Case No. 2:15-CV-4122-LDW-ARL

                 Plaintiff,

v.

Credit Management, LP,

                 Defendant.

-----------------------------------------------------X


### PLAINTIFF'S MEMORANDUM IN OPPOSITION
### TO DEFENDANT'S MOTION TO DISMISS


### HYSLIP & TAYLOR, LLC, LPA
*Attorneys for Plaintiff*

*Of Counsel*
Christopher P. McDonnell, Esq.
New York Bar No. 5170279
146-26 35th Avenue
Flushing , NY  11354
(P): (917) 741-1388
(E) Christopher.Mcdonnell@csi.Cuny.Edu

*Pro Hac Vice Counsel*
David M. Menditto, Esq.
Illinois Bar No. 6216541
1100 W. Cermak Rd., Suite B410
Chicago, IL  60608
(P) (312) 380-6110
(F) (312) 361-3509
(E) davidm@fairdebt411.com

### TABLE OF CONTENTS AND TABLE OF CASES AND AUTHORITIES

**Memorandum Table of Contents**                                                      **Page**

I.    INTRODUCTION ....................................................................................... 1

      A.    The Nature of TSC's Business and the Nomorobo Service It
            Provides. ............................................................................................ 1

      B.    The Nature of TSC's Claims Against CM. ......................................... 2

      C.    CM's Motion to Dismiss Relies Upon Inaccurate and Unfounded
            Statements Regarding TSC and the Nomorobo Service It Provides. .... 3

            1.    TSC does not wrongfully "hoard" telephone numbers and
                  does not finance its business by "commercializing" the
                  TCPA. ....................................................................................... 3

            2.    There is nothing about any TSC telephone number to
                  differentiate it from any other telephone number or to
                  attract a robocaller to dial it. .................................................. 4

      D.    CM's Robocalling Practices and the Prohibitions of the TCPA. ......... 5

II.   ISSUES PRESENTED BY CM'S MOTION TO DISMISS ...................... 9

      A.    TSC Has Sufficiently Alleged that the Court Has Article III
            Jurisdiction over this TCPA Action. ..................................................... 9

      B.    The TCPA Authorizes *Any* "Individual or Entity" to Enforce the
            Act's Provisions and, Therefore, the "Zone of Interests" Is
            Expanded to the Full Limits of Article III. ........................................... 11

      C     CM's "Self-Inflicted Injury" Argument Is Misplaced in the Context
            of the TCPA, which Empowers "Any" Person or Entity to Act as a
            "Private Attorney General" to Enforce the Statute. .............................. 15

      D.    TSC's Alleged Motive in Acquiring the Telephone Numbers that
            CM Robocalled Is Irrelevant to Whether TSC Has Article III
            Standing in this Case. ........................................................................... 17

      E.    Section 227(b)(1)(A)(iii) Applies to "Any Call" Placed to "Any
            Telephone Number Assigned to…Any Service for Which the
            Called Party Is Charged for the Call" and, Therefore, Applies to the
            TSC Telephone Numbers. ...................................................................... 19

      F.    TSC has not waived its right to bring the instant TCPA action
            against CM. .......................................................................................... 22

**TABLE OF CONTENTS AND TABLE OF CASES AND AUTHORITIES**

| **Memorandum Table of Contents (cont.)** | | **Page** |
|---|---|---|
| G. | TSC Has Not Violated the New York State Law Prohibition on Champerty. | 23 |
| III. | CONCLUSION | 24 |

| **Table of Cases** | **Page** |
|---|---|
| *Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 81, 430 N.Y.S.2d 179 (N.Y.S. App. Div. 4th Dep't 1980) | 22, 23 |
| *Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46 (1st Cir. 2015) | 12 |
| *Bank v. Independence Energy Grp., LLC*, 2014 U.S. Dist. LEXIS 141141 (E.D.N.Y. Oct. 2, 2014) | 21 |
| *Bauer v. Farm Sanctuary, Inc.*, 352 F.3d 625 (2nd Cir. 2003) | 9 |
| *Bell Atlantic v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) | 22 |
| *Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154 (1997) | 12, 15 |
| *Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 731 N.E.2d 581, 709 N.Y.S.2d 865 (N.Y. 2000) | 24 |
| *Brown v. Credit Mgmt., LP,* 2015 U.S. Dist. LEXIS 123353, *27 (N.D. Ga. May 18, 2015); *adopted* 2015 U.S. Dist. LEXIS 123319 (N.D. Ga. Sep. 16, 2015) | 5 |
| *Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316 (S.D. Fla. 2012) | 8 |
| *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265 (11th Cir. 2014) | 8, 14 |
| *Burrows v. Purchasing Power, LLC*, 2012 U.S. Dist. LEXIS 186556 (S.D. Fla. Oct. 18, 2012) | 10, 11 |
| *Cellco P'Ship v. Plaza Resorts Inc.*, 2013 U.S. Dist. LEXIS 139337 (S.D. Fla. Sep. 27, 2013) | 14, 15 |
| *Cellco P'ship v. Wilcrest Health Care Mgmt., Inc.*, 2012 U.S. Dist. LEXIS 64407 (D.N.J. May 8, 2012) | 14 |

**TABLE OF CONTENTS AND TABLE OF CASES AND AUTHORITIES**

| <u>Table of Cases (cont.)</u> | <u>Page</u> |
|---|---|
| *Charvat v. Travel Servs.*, 2015 U.S. Dist. LEXIS 81770 (N.D. Ill. June 24, 2015) | 6, 17 |
| *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010) | 12, 18 |
| *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 754 F. Supp. 1336 (N.D. Ill. 1991) | 16 |
| *Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 961 F.2d 667 (7th Cir. 1992) | 16 |
| *Cibilo Waste, Inc. v. San Antonio*, 718 F.3d 469 (5th Cir. 2013) | 11 |
| *City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262 (11th Cir. 2015) | 13 |
| *Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11 (E.D.N.Y. 2009) | 22 |
| *Davis v. Ind. State Police*, 541 F.3d 760 (7th Cir. 2008) | 22 |
| *Doe v Chao*, 540 U.S., 614, 627 n.12, 124 S. Ct., 1204, 1212 n.12 (2004) | 10 |
| *Evers v. Dwyer*, 358 U.S. 202 (1958) | 13 |
| *Fitzhenry v. ADT Corporation*, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014) | 18, 19, 23 |
| *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643 (S.D.N.Y. 2006) | 8 |
| *Fragrancenet.com, Inc. v. Fragrancex.com, Inc.*, 679 F. Supp. 2d 312 (E.D.N.Y. 2010) | 24, 25 |
| *Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961 (11th Cir. 2006) | 16 |
| *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114 (1982) | 12, 13, 15, 16, 23 |
| *In re. Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 725 F.3d 65, (2nd Cir. 2013) | 10 |
| *Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85 (2nd Cir. 2008) | 17, 18 |
| *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007) | 8 |

**TABLE OF CONTENTS AND TABLE OF CASES AND AUTHORITIES**

| **Table of Cases (cont.)** | **Page** |
|---|---|
| *King v. Time Warner Cable*, 2015 U.S. Dist. LEXIS 88044 (S.D.N.Y. July 7, 2015) | 7, 10, 14 |
| *Lary v. Trinity Phys. Fin. & Ins. Servs.*, 780 F.3d 1101 (11th Cir. 2015) | 10, 12 |
| *Leyse v. Bank of Am., N.A.*, 804 F.3d 316 (3rd Cir. 2015) | 15 |
| *Leyse v. Lifetime Entm't. Servs.*, 2015 U.S. Dist. LEXIS 139100 (S.D.N.Y. Sep. 22, 2015) | 6 |
| *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) | 10 |
| *Lynn v. Monarch Recovery Mgmt., Inc.*, Dkt. 1:11-cv-02824-WDQ (D. Md. Mar. 25, 2013) | 6 |
| *Lynn v. Monarch Recovery Mgmt., Inc.*, 586 Fed. Appx. 103 (4th Cir. 2014) | 6 |
| *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674 (S.D. Fla. 2013) | 7, 8 |
| *Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579 (N.D. Ill. June 13, 2011) | 18 |
| *Moses v. McDivitt*, 88 N.Y. 62 (1882) | 24 |
| *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220 (S.D. Cal. 2014) | 8 |
| *Olsen v. Stark Homes, Inc.*, 759 F.3d 140 (2nd Cir. 2014) | 13 |
| *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242 (11th Cir. 2014) | 14 |
| *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245 (11th Cir. 2015) | 7, 10 |
| *Penzer v. Transportation Ins. Co.*, 545 F.3d 1303 (11th Cir. 2008) | 7 |
| *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 275 U.S. App. D.C. 232 (D.C. Cir. 1989) | 16 |
| *Phillips Randolph Enterp., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027 (N.D. Ill. Jan. 11, 2007) | 7 |

### TABLE OF CONTENTS AND TABLE OF CASES AND AUTHORITIES

| **Table of Cases (cont.)** | **Page** |
|---|---|
| *Pierson v. Ray*, 386 U.S. 547 (1967) | 13 |
| *Procaps S.A. v. Pathon Inc.*, 2014 U.S. Dist. LEXIS 10874 (S.D. Fla. Jan. 29, 2014) | 16 |
| *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2nd Cir. 1993) | 13, 14 |
| *Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31 (2nd Cir. 2015) | 14 |
| *St. John's Univ. v. Sanford M. Bolton*, 757 F. Supp. 2d 144 (E.D.N.Y. 2010) | 22 |
| *St. Pierre v. Dyer*, 208 F.3d 394 (2nd Cir. 2000) | 16 |
| *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. 2012) | 8, 14, 15 |
| *Sprung v. Jaffe*, 3 N.Y.2d 539, 147 N.E.2d 6, 169 N.Y.S.2d 456 (N.Y. 1957) | 24 |
| *State v. American Blast Fax, Inc.*, 121 F. Supp. 2d 1085 (W.D. Tex. 2000) | 8 |
| *Sterling v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 186432 (W.D.N.Y. Nov. 22, 2013) | 8 |
| *Telephone Science Corporation v. Trading Advantage, LLC*, No. 14-cv-04369 (N.D. Ill., filed June 12, 2014) | 3, 4, |
| *Telephone Science Corp. v. Trading Advantage, LLC*, 2015 U.S. Dist. LEXIS 18591, (N.D. Ill. Feb. 17, 2015) | 6, 20, 21, 22 |
| *Thomas v. Dun & Bradstreet Credibility Corp.*, 2015 U.S. Dist. LEXIS 103322 (C.D. Cal. Aug. 5, 2015) | 10 |
| *Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S. Ct. 364 (1972) | 12, 13 |
| *United States v. Funds*, 719 F.3d 648 (7th Cir. 2013) | 9 |
| *United States v. Halpern*, 2015 U.S. Dist. 135361 (E.D.N.Y. Oct. 5, 2015) | 22 |
| *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 93 S. Ct. 2405 (1973) | 10 |
| *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100 (2d Cir. 2008) | 9, 10 |

### TABLE OF CONTENTS AND TABLE OF CASES AND AUTHORITIES

**Table of Cases (cont.)**                                                      **Page**

*Warnick v. Dish Network, LLC*, 2014 U.S. Dist. LEXIS 138381 (D. Colo. Sep.     20, 21, 22
30, 2014)

*Zyboro v. NCSPlus, Inc.*, 44 F. Supp. 3d 500 (S.D.N.Y. 2014)                   14


**Table of Constitutional and Statutory Authority**                            **Page**

U.S. Const. art. III, § 2                                                       9

47 U.S.C. § 227                                                                 2

47 U.S.C. § 227(b)(1)                                                           19, 21

47 U.S.C. § 227(b)(1)(A)                                                        20

47 U.S.C. § 227(b)(1)(A)(i)                                                     20

47 U.S.C. § 227(b)(1)(A)(ii)                                                    20

47 U.S.C. § 227(b)(1)(A)(iii)                                                   5, 6, 14, 19, 20, 21

47 U.S.C. § 227(b)(1)(B)                                                        19, 20, 21

47 U.S.C. § 227(b)(1)(C)                                                        19

47 U.S.C. § 227(b)(1)(D)                                                        19, 20, 21

47 U.S.C. § 227(b)(2)                                                           20
47 U.S.C. § 227(b)(2)(A)                                                        19

47 U.S.C. § 227(b)(3)                                                           7

47 U.S.C. § 227(c)(5)                                                           11, 15

New York Judiciary Law § 489                                                   23, 24

## TABLE OF CONTENTS AND TABLE OF CASES AND AUTHORITIES

| **Table of Other Authorities** | **Page** |
|---|---|
| 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3531.5 (3d ed.) | 16 |
| Fed. R. Civ. P. 8(c)(1) | 22 |
| *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015 | 1, 14, 23 |
| Transcript of Senate Subcommittee Hearing, S. Hrg. 113-117 | 1, 2 |

Plaintiff, Telephone Science Corporation ("TSC"), by and through its attorneys, Hyslip & Taylor, LLC, LPA, respectfully submits the following memorandum in opposition to the motion to dismiss filed by Defendant, Credit Management, LP ("CM").

## I.   INTRODUCTION

### A.   The Nature of TSC's Business and the Nomorobo Service It Provides.

TSC operates "Nomorobo," a service designed to help consumers avoid incoming computerized telephone calls that the Federal Trade Commission ("FTC") refers to as "robocalls."[1]  According to the Federal Communications Commission ("FCC"), "the term 'robocalls' includes calls made either with an automatic telephone dialing system (['ATDS'] or 'autodialer') or with a prerecorded or artificial voice."[2]

In 2013, the FTC held a contest "designed to help solve this problem by spurring innovation in the marketplace."[3]  Aaron Foss, the founder of TSC, was one of two winners of that inaugural contest.[4]

On July 10, 2013, the Senate Subcommittee on Consumer Protection, Product Safety, and Insurance held a hearing to address the problem faced by millions of consumers and businesses that receive unwanted robocalls.[5] Aaron Foss was called to testify at that hearing.[6]  At the

---

[1]  *See* First Amended Complaint ("FAC"), Doc. No. 7, ¶ 8.  A copy of the FAC is attached as "Exhibit A" to the Declaration of Defendant's counsel, Brett A. Scher, dated December 2, 2015 ("Scher Declaration"), and will be filed with Defendant's motion to dismiss.

[2]  *See* FAC, ¶ 9; *citing In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 4, footnote 1.

[3]  *See* "FTC Announces Robocall Challenge Winners," https://www.ftc.gov/news-events/press-releases/2013/04/
ftc-announces-robocall-challenge-winners.

[4] *See* FAC, ¶ 10.

[5]  *See* Transcript of Senate Subcommittee Hearing, S. Hrg. 113-117.  Excerpts from the Transcript of Senate Subcommittee Hearing are attached as "Exhibit A," to the Declaration of David M. Menditto, dated December 30, 2015 ("Menditto Declaration").  The Menditto

conclusion of Mr. Foss's testimony, Chairperson Senator Claire McCaskill encouraged Mr. Foss to quickly make the Nomorobo service available to the public.[7]  Mr. Foss did so shortly thereafter.  On the first day that Nomorobo was offered to the public, 120,000 people signed up for the service.[8]  Since that time, TSC has helped businesses and consumers to avoid over 50 million robocalls.[9]

In order to provide the Nomorobo service to consumers, TSC maintains a "honeypot" group of telephone numbers, from which TSC is able to gather information related to inbound calls.[10]  TSC compiles a large quantity of data related to calls placed to telephone numbers in the "honeypot," which enables TSC's robocall detection algorithm to accurately detect high frequency robocalling patterns.[11]  The TSC "honeypot" is comprised of thousands of telephone numbers to which TSC subscribes.[12]  ***Only CM's calls to telephone numbers in the TSC "honeypot" are at issue in this case***.

### B.    The Nature of TSC's Claims Against CM.

TSC alleges that CM placed thousands of robocalls to TSC telephone numbers without TSC's prior express consent in violation of the Telephone Consumer Protection Act, ("TCPA"), 47 U.S.C. § 227.  The TCPA empowers individuals and entities, like TSC, to act as private attorneys general to enforce the law.  In addition, the statute provides for significant statutory

---

Declaration includes excerpts from the Transcript that were not provided with the Schler Declaration.

[6] *Id.*

[7] *Id.* at 50.

[8] *See* "The War on Robocalling: How Aaron Foss Fought Robocalls and Won," Dec. 16, 2013, https://www.twilio.com/blog/2013/12/the-war-on-robocalling-how-aaron-foss-fought-robocalls-and-won.html.

[9] *See* https://www.nomorobo.com.

[10] *See* FAC, ¶ 13.

[11] *See* FAC, ¶ 14.

[12] *See* FAC, ¶ 15.

damage award, both as a deterrent to companies who repeatedly violate the law and as an incentive for private entities to bring claims such as this one.

In its motion to dismiss, CM does not challenge whether TSC has sufficiently alleged that CM placed robocalls to TSC telephone numbers without TSC's prior express consent.  Instead, CM argues that ***this particular plaintiff*** should not be permitted to bring an action for damages under the TCPA because of how TSC acquired its telephone numbers and the nature of TSC's business.  The TCPA, however, empowers individuals ***and entities***, like TSC, to bring actions like the instant one based on the illegal conduct of the caller, without regard to the called party's motive in bringing the action or whether the called party has brought similar actions against other repeat violators of the statute.

### C.   CM's Motion to Dismiss Relies Upon Inaccurate and Unfounded Statements Regarding TSC and the Nomorobo Service It Provides.

CM's motion to dismiss is heavily larded with gratuitous mischaracterizations of TSC and the nature of its business.  TSC will undertake to dispel CM's mischaracterizations and provide the Court with a more accurate context in which to evaluate TSC's claims and the issues raised by CM's motion to dismiss.

1.   *TSC does not wrongfully "hoard" telephone numbers and does not finance its business by "commercializing" the TCPA.*

In its motion, CM complains that TSC has "hoarded" telephone numbers as part of a "novel scheme to finance its operations by exploiting the TCPA."  (*See* Motion to Dismiss, p. 11.)  This is the same inaccurate and irrelevant gripe the defendant in *Telephone Science Corporation v. Trading Advantage, LLC*, No. 14-cv-04369 (N.D. Ill., filed June 12, 2014) unsuccessfully raised.  (*See* Order, attached to the Scher Declaration as "Exhibit B," pp. 4-6.)  TSC does not "hoard" telephone numbers.  It legally pays for those numbers and lawfully gathers data from calls placed to those numbers in order to optimize its Nomorobo service.  Moreover,

TSC does so with the support and blessing of Congress, the FTC and the FCC.  TSC is no more of a "hoarder" of telephone numbers than is a robocaller, like CM, which uses hundreds of telephone numbers to bombard consumers and businesses with robocalls each day.

In addition, contrary to CM's assertion, TSC does not finance its business through a "novel scheme" to commercialize the TCPA as part of a "brazen cash-grab."  (*See* Motion to Dismiss, p. 1.)  TSC was formed in 2013 and initially funded, in part, by the $25,000 award its founder, Aaron Foss, received after winning the FTC's inaugural "Robocall Challenge."  (*See* Declaration of Aaron Foss, attached to the Scher Declaration as "Exhibit D," ¶ 2.)  TSC also has investors and provides its Nomorobo service to businesses for a fee.  *Id.* at ¶¶ 3-4.  To date, only one TCPA lawsuit filed by TSC against a robocaller has been resolved.[13] Given this, it is irresponsible (indeed, it is defamatory) to suggest that TSC's business is financed through a "novel scheme" to commercialize the TCPA.  ***TSC's primary function has always been, and continues to be, helping consumers and businesses to avoid unwanted robocalls***.

> 2.   *There is nothing about any TSC telephone number to differentiate it from any other telephone number or to attract a robocaller to dial it.*

Another inaccurate statement in CM's motion is that TSC "attracts" robocalls from companies like CM.  (*See* Motion to Dismiss, p. 3.)  In support of that statement, CM cites a generic definition of "honeypot" from "www.thefreedictionary.com" and an article entitled "The Spy Who Said She Loved Me," which describes spying tactics of the former Soviet KGB.  *Id.*, at 1.  Neither of these "authorities" describes anything remotely resembling the TSC "honeypot" of telephone numbers.

---

[13] In *Telephone Science Corporation v. Trading Advantage, LLC*, Case No. 14-cv-04369 (N.D. Ill., filed June 12, 2014), the parties stipulated to dismiss the case with prejudice shortly after the Court denied the defendants' motion to dismiss.

The fact that TSC refers to its bank of telephone numbers as a "honeypot" does not mean that TSC's numbers *attract* robocallers like CM to call them.  On the contrary, the telephone numbers in the TSC "honeypot" receive thousands of calls from non-robocallers as well.  TSC gathers information regarding *all* incoming calls it receives in order to distinguish between robocalls and non-robocalls and optimize the Nomorobo service for its customers.

There is nothing about any TSC telephone number to differentiate it from any other number that CM chose to call or anything that would have "attracted" CM to call a TSC number. (*See* FAC, ¶¶ 24-33.)  To illustrate this point, consider the below three (3) telephone numbers:

(410) 286-1556          (312) 380-6110          (213) 365-3000

Which of the above numbers is the most "attractive" one? Would a robocaller be more inclined to dial one over the others?  Only the (410) number is from the TSC honeypot.  The (312) number belongs to the undersigned attorney for TSC and the (213) number belongs to CM and was used by CM to robocall TSC over 500 times.  Clearly, each number is just as "attractive" as the others.  CM voluntarily chose to robocall numbers in the TSC honeypot and is solely responsible for that decision.

### D.   CM's Robocalling Practices and the Prohibitions of the TCPA.

CM is a robocaller.  It uses a predictive dialer to place a high volume of calls at a speed that an individual manually dialing a 10-digit number is unable to match.  The predictive dialer that CM utilizes is an ATDS within the meaning of the TCPA.  *See Brown v. Credit Mgmt., LP,* 2015 U.S. Dist. LEXIS 123353, *27 (N.D. Ga. May 18, 2015); *adopted* 2015 U.S. Dist. LEXIS 123319 (N.D. Ga. Sep. 16, 2015).  The fact that CM uses an ATDS to place calls, however, does not in itself violate the TCPA.

Section 227(b)(1)(A)(iii) of the TCPA provides, in part:

> It is unlawful for any person…to make ***any call***…using any [ATDS] or an artificial or prerecorded voice…(iii) to ***any telephone number*** assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or ***any service for which the called party is charged for the call***….

47 U.S.C. § 227(b)(1)(A)(iii) (emphases added).

TSC alleges that CM violated Section 227(b)(1)(A)(iii) by using an ATDS to place thousands of robocalls to TSC telephone numbers without TSC's prior express consent.  (*See* FAC, ¶ 58.)  Each telephone number that CM called is assigned to a voice over Internet protocol ("VoIP") telephone service for which TSC is charged for the call.  (*See* FAC, ¶ 26.)  The VoIP telephone service to which the TSC numbers are assigned assesses a per-minute charge to TSC for each incoming call it answers.  (*See* FAC, ¶ 27.)  TSC's VoIP service, therefore, qualifies as a service for which the called party is charged for the call" within the meaning of Section 227(b)(1)(A)(iii).[14]  *See Lynn v. Monarch Recovery Mgmt., Inc.*, 586 Fed. Appx. 103 (4th Cir. 2014); *affirming Lynn v. Monarch Recovery Mgmt., Inc.*, Dkt. 1:11-cv-02824-WDQ (D. Md. Mar. 25, 2013) (VoIP service for which plaintiff was charged $0.0149 per minute for each of defendant's incoming calls "fits squarely within the separate prohibition of the [TCPA's] call charged provision."); *Telephone Science Corp. v. Trading Advantage, LLC*, 2015 U.S. Dist. LEXIS 18591, *3 (N.D. Ill. Feb. 17, 2015) ("TSC's allegations fall within the statutory prohibition of § 227(b)(1)(A)(iii)").

The TCPA is a strict liability statute that focuses on the conduct of the ***caller***, not the called party.  Under the TCPA, a robocaller faces significant liability under the TCPA for its illegal calls, regardless of ***how the call was answered***, *see Leyse v. Lifetime Entm't. Servs.*, 2015 U.S. Dist. LEXIS 139100, *4-13 (S.D.N.Y. Sep. 22, 2015) (plaintiff stated claim based on pre-

---

[14] In its motion to dismiss, CM does not challenge whether TSC's VoIP service is a "service for which the called party is charged for the call" within the meaning of Section 227(b)(1)(A)(iii). Instead, CM argues that Section 227(b)(1)(A)(iii) does not apply to business telephone numbers.

recorded voice call answered by answering machine), *why the call was answered*, *see Charvat v. Travel Servs.*, 2015 U.S. Dist. LEXIS 81770, *10-11 (N.D. Ill. June 24, 2015) (plaintiff's motivation of "financial gain rather than selfless consumer advocacy" is irrelevant to TCPA claim), or *whether the call was answered at all*, *King v. Time Warner Cable*, 2015 U.S. Dist. LEXIS 88044, *12 (S.D.N.Y. July 7, 2015) ("unanswered calls count").   Moreover, the TCPA does not require a business plaintiff to show that its business was disrupted as a result of the defendant's misconduct.  *See Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1281-82 (11th Cir. 2015) (business stated a TCPA claim based on fax transmission that no employee saw or was even aware of).

The potential liability a robocaller faces for violating the TCPA is significant – $500 to $1,500 *per violation*.   *See* 47 U.S.C. § 227(b)(3).   Courts have made clear, however, that Congress is under no obligation to make illegal behavior affordable, particularly where the wrongdoer has committed multiple violations.   *Manno v. Healthcare Revenue Recovery Grp., LLC*, 289 F.R.D. 674, 691 (S.D. Fla. 2013); *citing Phillips Randolph Enterp., LLC v. Rice Fields*, 2007 U.S. Dist. LEXIS 3027, *7-8 (N.D. Ill. Jan. 11, 2007).   By making the practice of repeatedly violating the statute prohibitively expensive, the TCPA serves its intended goal of deterrence and provides an incentive for private enforcement of the law.[15]   *See Penzer v. Transportation Ins. Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008).

---

[15] In its motion, CM complains of the "enormous" damages that are recoverable based on the thousands of illegal robocalls it placed.  *See* Motion to Dismiss, p. 11.   In truth, a statutory damage award under the TCPA can never be excessive or disproportionate to the alleged misconduct because there is a direct correlation between the number of violations the defendant committed and the statutory damage award the plaintiff may recover.  *See* 47 U.S.C. § 227(b)(3) (plaintiff entitled to $500 to $1,500 in "damages *for each such violation*") (emphasis added); *see also Physicians Healthsource, Inc. v. Doctor Diabetic Supply, LLC*, 2014 U.S. Dist. LEXIS 177222, *24-25 (S.D. Fla. Dec. 24, 2014) ("Congress determined that damages of $500 is proportionate for each violation. 'That proportionality does not change as more plaintiffs seek

To help robocallers avoid significant liability under the TCPA, courts admonish them to place "intermittent live calls" to each number they are calling and verify that the current subscriber has consented to be called.  *See Breslow v. Wells Fargo Bank, N.A.*, 857 F. Supp. 2d 1316, 1322 (S.D. Fla. 2012); *aff'd* 755 F.3d 1265 (11th Cir. 2014); *Olney v. Progressive Cas. Ins. Co.*, 993 F. Supp. 2d 1220, 1224 (S.D. Cal. 2014)*; Sterling v. Mercantile Adjustment Bureau, LLC*, 2013 U.S. Dist. LEXIS 186432, *8 (W.D.N.Y. Nov. 22, 2013).   Once the robocaller has verified it has consent to call a telephone number, it is free to load the number into its autodialer and robocall the number again and again…day after day…until such time that the subscriber revokes its consent or the telephone number is transferred to a new subscriber.  *See Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 639 (7th Cir. 2012) ("any consent previously given, lapses when Cell Number is reassigned.")

The problem for the robocaller is that placing live verification calls costs money.  It is much more cost-effective for the robocaller simply to load telephone numbers into its autodialer and force the subscribers to notify the robocaller that they do not wish to be called.  Companies, however, do not have an unfettered right to use the most cost-effective technology available to them if doing so violates federal law.  *See, e.g., Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643,

---

relief; indeed, the size of [the defendant's] potential liability expands at exactly the same rate as the class size.' [citation omitted]"); *Manno*, 289 F.R.D., at 691 ("While Defendants may face a potentially larger liability in a class action, it does not follow that any damages awarded would be disproportionate. The text of the statute makes absolutely plain that, in Congress's judgment, damages of $500 for each violation, or triple that if the violations are willful, are proportionate and appropriate compensation for the consumer. *See* 47 U.S.C. § 227(b)(3)(B)."); *Kavu, Inc. v. Omnipak Corp.*, 246 F.R.D. 642, 650 (W.D. Wash. 2007) (defendant's potential liability of $1.5 million to $4.5 million for placing robocalls to 3,000 class members "is a direct result of defendant's large number of violations, for which it should not be rewarded."); *State v. American Blast Fax, Inc.*, 121 F. Supp. 2d 1085, 1091 (W. Tex. 2000) (""[T]he TCPA's $500 minimum damages provision, when measured against the overall harms of unsolicited fax advertising and the public interest in deterring such conduct, is not 'so sever and oppressive as to be wholly disproportioned to the offense or obviously unreasonable.'")

659 (S.D.N.Y. 2006) (in Fair Debt Collection Practices Act ("FDCPA") action, debt collector was not entitled to leave voicemail messages that violated the Act, even though voicemail was "the most economical or efficient").  In order to comply with the TCPA, a robocaller may need to *temporarily* refrain from using its autodialer until it has verified that the current subscriber consents to be called.

The robocaller has a choice – either incur the costs associated with intermittent live calls, or continue to use a more cost-efficient autodialer technology and risk violating the TCPA.  It is a purposeful and calculated business decision for which CM is solely responsible.

## II.   ISSUES PRESENTED BY CM'S MOTION TO DISMISS

The central question raised by CM's motion to dismiss is whether TSC, a company formed for the purpose of combatting robocalls, should be permitted to sue a robocaller under the TCPA, a statute that empowers individuals *and entities* to act as "private attorneys general" and recover significant statutory damage awards, both as an incentive for private enforcement of the law and a deterrent to future wrongful conduct by all robocallers.  For the reasons stated below, the answer to this question is "yes."

### A.   TSC Has Sufficiently Alleged that the Court Has Article III Jurisdiction over this TCPA Action.

"Article III of the Constitution confines the reach of federal jurisdiction to 'Cases' and 'Controversies.'   U.S. Const. art. III, § 2."   *W.R. Huff Asset Mgmt. Co., LLC v. Deloitte & Touche LLP*, 549 F.3d 100, 106 (2d Cir. 2008).  "[A]t the pleading stage, standing allegations need not be crafted with precise detail, nor must the plaintiff prove his allegations of injury."   *Bauer v. Farm Sanctuary, Inc.*, 352 F.3d 625, 631 (2nd Cir. 2003); *see also United States v. Funds*, 719 F.3d 648, 651 (7th Cir. 2013) ("At the pleading stage Article III standing is something to be alleged, not proved.").

"Article III standing consists of three 'irreducible' elements: (1) injury-in-fact, which is a 'concrete and particularized' harm to a 'legally protected interest'; (2) causation in the form of a 'fairly traceable' connection between the asserted injury-in-fact and the alleged actions of the defendant; and (3) redressability, or a non-speculative likelihood that the injury can be remedied by the requested relief.' *W.R. Huff,* 549 F.3d, at 106-107 (emphases omitted) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)).

A **nominal** "injury-in-fact" traceable to the defendant's alleged misconduct is sufficient to confer Article III jurisdiction upon a federal court.  The Supreme Court has stated, "[A]n identifiable trifle is enough for standing to fight out a question of principle; **the trifle is the basis for standing and the principle supplies the motivation**."  *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14, 93 S. Ct. 2405 (1973) (emphasis added); *see also In re. Methyl Tertiary Butyl Ether ("MTBE") Prod. Liab. Litig.*, 725 F.3d 65, 84 (2nd Cir. 2013) ("'[t]he injury-in-fact necessary for standing need not be large[;] an identifiable trifle will suffice.'").

In the TCPA context, a "trifle" of injury sufficient to create Article III standing includes the nominal charge incurred from an unsolicited incoming robocall, *King*, 2015 U.S. Dist. LEXIS 88044, *19, the loss of a used minute in a limited cellular airtime plan, *Thomas v. Dun & Bradstreet Credibility Corp.*, 2015 U.S. Dist. LEXIS 103322, *22 (C.D. Cal. Aug. 5, 2015), and the minor inconvenience of being unable to use one's fax machine, even when the recipient never saw or was even aware of the fax transmission, *Palm Beach*, 781 F.3d, at 1281-82.

Out-of-pocket expenses incurred by a plaintiff qualify as an "injury-in-fact" sufficient to establish Article III standing.  *Doe v Chao*, 540 U.S., 614, 627 n.12, 124 S. Ct., 1204, 1212 n.12 ("out-of-pocket expenses …suffice to qualify under any view of actual damages"); *Burrows v.*

-10-

*Purchasing Power, LLC*, 2012 U.S. Dist. LEXIS 186556, *11-12 (S.D. Fla. Oct. 18, 2012) (plaintiff sufficiently pleaded monetary loss, including out-of-pocket expenses, to create standing); *Cibilo Waste, Inc. v. San Antonio*, 718 F.3d 469, 473-74 (5th Cir. 2013) (increase to cost of doing business qualifies as "injury-in-fact").

In the instant case, TSC alleges that it suffered out-of-pocket costs in the form of per-minute charges that TSC incurred for each robocall it answered.  (*See* FAC, ¶ 48.)  These expenses qualify as an "injury in fact" under Article III.  Moreover, TSC's expenses are "fairly traceable" to the conduct of CM, as they are a direct and proximate result of the robocalls that CM placed to TSC numbers.  If CM had not placed the robocalls, none of these expenses would have been incurred.  CM's misconduct in this case can be redressed through the relief sought by TSC, as any statutory damages TSC recovers will be based directly on the number of TCPA violations CM committed.  TSC, therefore, has sufficiently alleged Article III standing to bring its action against CM.

**B.    The TCPA Authorizes *Any* "Individual or Entity" to Enforce the Act's Provisions and, Therefore, the "Zone of Interests" Is Expanded to the Full Limits of Article III.**

In its motion, CM cites various examples where a legislator or court commented that the TCPA was enacted to help consumers avoid unwanted calls and invasions of their privacy. While these certainly are some of the goals for which the TCPA was enacted, two additional goals, as stated in Section I.D., *supra*, are deterrence and private enforcement of the law. Regardless, the fact that the TCPA was enacted, in part, to help consumers is not determinative as to whether TSC is authorized to bring the instant action.

The TCPA places no restrictions on the types of persons or entities that can enforce the Act's provisions.  Any "person or entity" can bring a private right of action against any person or business that violates the Act.  *See* 47 U.S.C. § 227(c)(5).  For this reason, courts regularly

observe that Congress has empowered individuals and entities, like TSC, to act as "private attorneys general to pursue claims for well defined statutory damages."  *See Bais Yaakov of Spring Valley v. ACT, Inc.*, 798 F.3d 46, 49 (1st Cir. 2015); *see also Lary v. Trinity Phys. Fin. & Ins. Servs.*, 780 F.3d 1101, 1105 (11th Cir. 2015); *Charvat v. Echostar Satellite, LLC*, 630 F.3d 459, 461 (6th Cir. 2010).

In *Bennett v. Spear*, 520 U.S. 154, 117 S. Ct. 1154 (1997), the question before the Court was whether the plaintiffs, who were not environmentalists, but businesses motivated by economic interests, had Article III standing to challenge a biological opinion issued by the Fish and Wildlife Service in accordance with the Endangered Species Act of 1973 ("ESA").  *Id.*, at 157, 117 S. Ct., at 1158-59.  The district court had dismissed the action, concluding that the plaintiffs' "commercial interests" did not fall within the "zone of interests" to be protected by the ESA, and the court of appeals affirmed.  *Id.*, at 161, 117 S. Ct., at 1160.  Justice Scalia, writing for a unanimous Supreme Court, rejected this argument, noting that the citizen-enforcement provision of the ESA authorized "any person" to bring an action to enforce the Act.  *Id.*, at 165-66, 117 S. Ct., at 1162-63.  According to the Court, because the Act "encourage[s] enforcement by so-called 'private attorneys general'" and does not require potential plaintiffs to be environmentalists seeking to protect wildlife, the "zone of interests" (*i.e.*, standing) is "expanded to the full extent permitted by Article III."  *Id.*; *citing Trafficante v. Metropolitan Life Ins. Co.*, 409 U.S. 205, 93 S. Ct. 364 (1972).

The Supreme Court has also held that Article III standing can exist even where the plaintiff purposefully chose to interact with a defendant engaged in illegal misconduct.  In *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 102 S. Ct. 1114 (1982), three groups of plaintiffs filed suit alleging that the defendants engaged in "racial steering" practices in violation

of the Fair Housing Act of 1968 ("FHA").  One of the plaintiffs was a "black tester," *i.e.*, a black individual who had no intention of renting an apartment from the defendants, but instead merely posed as a potential renter for the purpose of determining whether the defendants were engaged in racial steering.  *Id.*, at 373, 102 S. Ct. 1114, 1121.  In considering whether the black tester had standing to bring an FHA claim, Justice Brennan, writing for another unanimous Court, observed that the FHA made it unlawful "'[to] represent to **any person** because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.'"  *Id.* (emphasis included); *quoting* 42 U.S.C. 3604(d). According to the Court:

> A tester who has been the object of a misrepresentation made unlawful under [the FHA] has suffered injury in precisely the form the statute was intended to guard against, and therefore has standing to maintain a claim for damages under the Act's provisions. ***That the tester may have approached the real estate agent fully expecting that he would receive false information, and without any intention of buying or renting a home, does not negate the simple fact of injury within the meaning of [the Act.]***  *See Pierson v. Ray*, 386 U.S. 547, 558 (1967); *Evers v. Dwyer*, 358 U.S. 202, 204 (1958) (per curiam).

*Havens Realty*, 455 U.S., at 373-74, 102 S. Ct., at 1121-22 (emphasis added).

The Second Circuit continues to follow the Supreme Court's decision in *Havens Realty* in holding that a plaintiff has Article III standing to bring an FHA claim based, in part, on false information provided to a "tester."  *See, e.g., Olsen v. Stark Homes, Inc.*, 759 F.3d 140 (2nd Cir. 2014).  Moreover, the Eleventh Circuit recently noted that *Havens Realty* and *Trafficante* (on which the *Bennett* Court relied) have never been overruled.  *See City of Miami v. Bank of Am. Corp.*, 800 F.3d 1262, 1277 (11th Cir. 2015).

The breadth of *Havens Realty* is further illustrated by the Second Circuit's decision in *Ragin v. Harry Macklowe Real Estate Co.*, 6 F.3d 898 (2nd Cir. 1993).  In *Ragin*, the plaintiffs filed an FHA complaint based solely on the defendants' advertisements for residential apartments, which the plaintiffs read in the *New York Times* newspaper.  *Id.*, at 901.  According

to the plaintiffs, the advertisements violated the FHA "because all the models portrayed in the advertisements were white." *Id.* None of the plaintiffs had ever interacted with the defendants. Nevertheless, the Second Circuit, citing *Havens Realty*, held that the plaintiffs had Article III standing to bring their claims because the FHA made it unlawful for the defendants to make false representations to "any person" because of race – even a remote person reading a newspaper.[16] *Id.*, at 904-905.

The lone TCPA case that CM cites for the proposition that TSC is not within the "zone of interests" protected by § 227(b)(1)(A)(iii) is *Cellco P'ship v. Wilcrest Health Care Mgmt., Inc.*, 2012 U.S. Dist. LEXIS 64407 (D.N.J. May 8, 2012). That case, however, was based on the court's holding that "called party" is limited to the "intended recipient" of the call. *Id.* at *17-20. According to the court, the plaintiff, a business, was not the "intended recipient" of the defendant's call and, therefore, was outside the TCPA's intended "zone of interests." *Id.*

The FCC and a numerous other courts – including the Southern District of New York – have rejected the *Wilcrest* court's interpretation of "called party," which was the foundation of the that court's "zone of interests" analysis. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, pp 40-41, ¶ 73; *King*, 2015 U.S. Dist. LEXIS 88044, at *9 (S.D.N.Y. held "Called party clearly refers to the actual party called."); *Zyboro v. NCSPlus, Inc.*, 44 F. Supp. 3d 500, 504 (S.D.N.Y. 2014); *Breslow v. Wells Fargo Bank, N.A.*, 755 F.3d 1265, 1267 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1251 (11th Cir. 2014); *Soppet*, 679 F.3d, at 643 ("called party" means current subscriber); *see also Cellco P'Ship v. Plaza Resorts Inc.*, 2013 U.S. Dist. LEXIS 139337, *19 (S.D. Fla. Sep. 27, 2013) (declining to

---

[16] The *Ragin* decision continues to be good law in the Second Circuit. *See, e.g., Rodriguez v. Village Green Realty, Inc.*, 788 F.3d 31, 41 (2nd Cir. 2015) (*citing Ragin*).

follow *Wilcrest* and holding that business had standing to bring claim under § 227(b)(1)(A)(iii)). Even the Third Circuit (in which the *Wilcrest* court sits) recently stated in *Leyse v. Bank of Am., N.A.*, 804 F.3d 316 (3rd Cir. 2015), "[t]here are good reasons to doubt the equation of 'intended recipient' with 'called party,' but the parties did not brief the issue, and we need not decide it here." *Id.*, at 325 (*citing Soppet*, *supra*).  Based on the wealth of authority that either rejects or calls into question the *Wilcrest* analysis on which CM relies, this Court should decline to follow *Wilcrest*.

The TCPA, like the statutes at issue in *Bennett* and *Havens Realty*, places no restrictions on the type of person or entity that can enforce the Act's provisions.  Any "person or entity" can take on the role of a "private attorney general" and bring an action against any person or business that violates the Act.  *See* 47 U.S.C. § 227(c)(5).  Standing, therefore, is "expanded to the full extent permitted by Article III."  *See Bennett*, 520 U.S., at 166, 117 S. Ct., at 1163.  .  That TSC chose to answer CM's illegal robocalls and, as a result, incurred per-minute charges "does not negate the simple fact of injury within the meaning of the [Act]."  *See Havens Realty*, 455 U.S., at 374, 102 S. Ct., at 1122.  Accordingly, CM's argument that TSC falls outside the "zone of interests" covered by the TCPA must fail.

    **C.**    **CM's "Self-Inflicted Injury" Argument Is Misplaced in the Context of the TCPA, which Empowers "Any" Person or Entity to Act as a "Private Attorney General" to Enforce the Statute.**

CM argues that the per-minute charges TSC incurred as a result of CM's robocalls are a "self-inflicted injury" that fails to establish Article III standing.  In advancing that argument, however, CM has not cited a single case that applies the "self-inflicted injury" test in the context

of a TCPA claim.[17]   This is because TCPA only imposes liability on a defendant that has engaged in illegal robocalling practices that violate the Act.   A plaintiff cannot "injure itself" without the illegal robocall being made in the first place.

In *Procaps S.A. v. Pathon Inc.*, 2014 U.S. Dist. LEXIS 10874 (S.D. Fla. Jan. 29, 2014), the court opens with the quote, "***If I swing my fist at your face, you may decide to duck. But if you stand still, and I deck you, I am the cause of your injury. You did not punch yourself***." *Id.* at *1 (emphasis included); *quoting Chicago Prof'l Sports Ltd. P'ship v. Nat'l Basketball Ass'n*, 754 F. Supp. 1336, 1353 (N.D. Ill. 1991), *aff'd*, 961 F.2d 667 (7th Cir. 1992).   The court went on to state:

> "[N]ot every infirmity in the causal chain deprives a plaintiff of [Article III] standing." *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000).   And"[t]he mere fact that the [plaintiff's] own decisions played a role in its [injury] does not obviate the causal connection between the defendants' conduct and the plaintiff's injury."   [*Gulf States Reorganization Grp., Inc. v. Nucor Corp.*, 466 F.3d 961, 965 (11th Cir. 2006)].   ***Rather, an injury is self-inflicted only if it is so "completely due to the [complainant's] own fault as to break the causal chain.***" *Petro-Chem Processing, Inc. v. E.P.A.*, 866 F.2d 433, 438, 275 U.S. App. D.C. 232 (D.C. Cir. 1989)(Ginsburg, J.) (citing 13A C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure: Jurisdiction § 3531.5 (3d ed.)) (emphasis added).

*Procaps*, 2014 U.S. Dist. LEXIS 10874, at *17-20.

In this case, CM argues that because TSC acquired telephone numbers that were known to be receiving a high volume of calls and because TSC answered those calls, any "injury" TSC sustained as a result of CM's robocalls was "self inflicted."   The point of *Havens Realty*, however, is that where a statute authorizes ***any*** person (or "entity," as in the case of the TCPA) to bring an action, any injury suffices to create standing, regardless of whether the plaintiff

---

[17] As of the date on which this memorandum is being filed, counsel for TSC has been unable to find a single published opinion on LexisNexis that even mentions the "self-inflicted injury" argument in the context of a TCPA claim.  (*See* Menditto Declaration, ¶ 2.)

sustained the injury as a result of its voluntarily interaction with a defendant engaged in wrongdoing.

CM's decision to use an ATDS to place illegal robocalls to the TSC telephone numbers without first verifying whether TSC had consented to be called was a purposeful and voluntary choice for which CM alone is responsible.  If CM had not placed those robocalls, there would have been no calls to answer.  ***TSC did not "punch" itself***.  CM's "self inflicted injury" argument, therefore, must fail.

### D.    TSC's Alleged Motive in Acquiring the Telephone Numbers that CM Robocalled Is Irrelevant to Whether TSC Has Article III Standing in this Case.

As stated earlier in this memorandum, TSC serves a public good.  It works with the government to combat illegal robocalls and has helped thousands of consumers and businesses avoid millions of robocalls.  In order to gather the information TSC needs to optimize its Nomorobo service, it makes good sense that TSC would go where the robocallers are.  This means purchasing thousands of telephone numbers, many of which are considered "dirty" numbers that receive a high volume of calls (including thousands of non-robocalls).  CM cannot escape the fact that it would not face a single dollar of potential liability in this case if CM had simply placed live verification calls to the TSC numbers before loading them into its autodialer and robocalling those numbers thousands of times.  Moreover, CM could have significantly mitigated its liability by placing intermittent live calls, which it also chose not to do.

Regardless, even if TSC's primary motive in acquiring telephone numbers were to bring actions to enforce the TCPA (which it is not), TSC would be permitted to do so.  *See Charvat v. Travel Servs.*, 2015 U.S. Dist. LEXIS 81770, at *10-11 (plaintiff's motivation of "financial gain rather than selfless consumer advocacy" is irrelevant to TCPA claim); *Physicians Healthsource*, 2014 U.S. Dist. LEXIS 177222, at *18 ("there is generally nothing wrong with being a

professional plaintiff"); *Martin v. Bureau of Collection Recovery*, 2011 U.S. Dist. LEXIS 157579, *8 (N.D. Ill. June 13, 2011) ("Characterizing Plaintiff as a 'professional plaintiff' does not boost [Defendant's] argument"); *Charvat v. Echostar Satellite,* 630 F.3d, at 461 (noting plaintiff had previously filed 13 other TCPA lawsuits); *see also Jacobson v. Healthcare Fin. Servs., Inc.*, 516 F.3d 85, 91 (2nd Cir. 2008) (in FDCPA context, the statute "enlists the efforts of sophisticated consumers…as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.")

In *Fitzhenry v. ADT Corporation*, 2014 U.S. Dist. LEXIS 166243 (S.D. Fla. Nov. 3, 2014), the plaintiff brought TCPA claims against multiple defendants based on the defendants' unauthorized pre-recorded calls.  The defendants challenged the plaintiff's standing to bring those claims, arguing that the plaintiff was a "professional plaintiff" who "pursues TCPA claims as a source of income."  *Id.*, at *11.  In support of their argument, the defendants cited deposition testimony they had elicited from the plaintiff, the plaintiff's wife, and his daughter, which revealed the following:

(i) "Plaintiff began pursuing TCPA claims as 'an opportunity to bring in more income;'"

(ii) "Plaintiff had several different phone numbers at his home to get '[a] higher volume of [telemarketing] calls;'" and

(iii) "Plaintiff…makes an annual average income of $30,000 to $40,000 from TCPA claims and lawsuits."

*Id.*, at *11-12.  The *Fitzhenry* defendants argued that "because Plaintiff welcomes telemarketing calls to support his TCPA business, he [was] not in the TCPA's zone of protection."  *Id.*, at *12.

The *Fitzhenry* court rejected the defendants' argument, holding "Defendants have not cited any authority for the proposition that a professional plaintiff is outside the TCPA's statutory zone of interest.  Although Plaintiff may have created a home environment that allows

-18-

him to document telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside of the TCPA's zone of interest." *Id.*

In this case, as in *Fitzhenry*, it does not matter that TSC has an enhanced ability to document illegal robocalls and enforce the TCPA against companies, like CM, that place such calls. At all times, CM could have avoided liability under the TCPA by simply placing live verification calls to the TSC numbers before loading them into the CM autodialer. No one…certainly not TSC…ever lured or tricked CM into placing any robocalls to any TSC number. Any alleged motive on the part of TSC in acquiring its telephone numbers, therefore, is irrelevant to TSC's claims that CM violated the TCPA.[18]

### E. Section 227(b)(1)(A)(iii) Applies to "Any Call" Placed to "Any Telephone Number Assigned to…Any Service for Which the Called Party Is Charged for the Call" and, Therefore, Applies to the TSC Telephone Numbers.

Section 227(b)(1) of the TCPA sets forth four (4) prohibitions for which a "person *or entity*" is empowered to bring a private action against a defendant that violates the statute. Only two of the subsections within § 227(b)(1) specifically refer to a "residential" or "business" line. *See* 47 U.S.C. § 227(b)(1)(B) and § 227(b)(1)(D). The other two subsections refer to a call to "*any* telephone number," 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added), and "*a* telephone facsimile machine," 47 U.S.C. § 227(b)(1)(C) (emphasis added). If Congress had wanted to limit either of these two (2) subsections to apply only to consumers, it could have done so. Yet it did not. Both subsections, therefore, apply to both consumer and business lines.

Nevertheless, CM argues that applying Section 227(b)(1)(A) to businesses would render "superfluous" the language in Section 227(b)(2)(A), which instructs the FCC to "consider prescribing regulations to allow businesses to avoid receiving calls made using an artificial or

---

[18] Again, TSC denies Credit Management's accusations that TSC was formed or acquired its telephone numbers for an improper or litigious purpose.

prerecorded voice to which they have not given their prior express consent." (*See* Motion to Dismiss, pp. 14-15.)  That language, however, tracks the prohibition in Section 227(b)(1)(B), which expressly applies to "residential" lines.  It does not track the language of Section 227(b)(1)(A)(iii), which applies to "any call" placed to "any telephone number" that meets the criteria set forth in that subsection.

In *Warnick v. Dish Network, LLC*, 2014 U.S. Dist. LEXIS 138381 (D. Colo. Sep. 30, 2014), the court considered the precise argument CM seeks to resurrect in this case.  In rejecting that argument, the court held:

> DISH argues that, read together, the TCPA does not prohibit calls made to cellular numbers of businesses. I reject DISH's argument. I first note that "'[w]here statutory language is clear and unambiguous, that language is controlling and courts should not add to that language.'" *Marx v. Gen. Revenue Corp.,* 668 F.3d 1174, 1186 (10th Cir. 2011) (quotation omitted).  In the TCPA, Congress specifically delineated when the subsections were applicable to businesses (see, e.g., § 227(b)(1)(D)) or to residential lines (§ 227(b)(1)(B)). However, when it referred to cellular telephone and related services, it prohibited calls to "any telephone number" associated with those services. The law is clear that "if 'Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.'" *Id.* (*quoting Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983)); *see also Anderson v. United Tel. Co. of Kan.*, 933 F.2d 1500, 1502 (10th Cir.1991) ("[T]he legislature's use of two different terms is presumed to be intentional."). In light of this, I find it should be presumed that Congress acted intentionally and purposely in making clear that any call to a cellular telephone, whether assigned to a business or not, is prohibited under the TCPA when the other requirements are met.
>
> * * *
>
> I also reject DISH's argument that if § 227(b)(1)(A) was intended to apply to calls made to business numbers, including business cellular telephones, there would be no reason for § 227(b)(2) to authorize the FCC to "consider prescribing regulations" to allow businesses to avoid receiving calls made using an artificial or prerecorded voice to which they have not given their prior express consent. I disagree. Section § 227(b)(1)(A)(i) and (ii) prohibit calls only to certain types of business telephone lines, thus implying that calls to other business lines using an ATDS or an artificial or prerecorded voice are permitted. Moreover, § 227(b)(1)(D) refers specifically to businesses and prohibits calls only to two or more telephone lines simultaneously of a multi-line business.  In apparent recognition of these limitations, § 227(b)(2) gave Congress the authority to prescribe calls made to all

businesses. [Footnote omitted.] This has no impact, however, on § 227(b)(1)(A)(iii) which already prohibits such calls.

*Warnick*, 2014 U.S. Dist. LEXIS 138381, AT *33-35.

Similarly, in *Telephone Science Corp. v. Trading Advantage, supra*, the court rejected

CM's argument, stating:

"The preeminent canon of statutory interpretation requires that courts presume that the legislature says in a statute what it means and means in a statute what it says there." Patriotic Veterans, Inc. v. Ind., 736 F.3d 1041 (7th Cir. 2013) (internal citations, quotation marks and alterations omitted). The plain language of the statute states that it is unlawful to make "any call using any automatic telephone dialing system" to "any telephone number assigned to . . . any service for which the called party is charged for the call." 47 U.S.C. § 227(b)(1)(emphasis added). Because the language of the statute is unambiguous, does not expressly exclude calls made to businesses (indeed, it uses the broad and inclusive word "any"), and TSC's allegations fall within the statutory prohibition of § 227(b)(1)(A)(iii), the Court rejects the defendants' position.

*Telephone Science Corp. v. Trading Advantage*, 2015 U.S. Dist. LEXIS 18591, at *2-3.

The lone case CM cites for the proposition that Section 227(b)(1)(A)(iii) does not apply

to business telephone numbers is *Bank v. Independence Energy Grp., LLC*, 2014 U.S. Dist.

LEXIS 141141 (E.D.N.Y. Oct. 2, 2014). That case, however, did not address whether Section

227(b)(1)(A)(iii) applies to a business telephone number. Instead, the *Bank* court addressed

whether a *pro se* plaintiff's telephone number qualified as a "residential telephone line" within

the meaning of Section 227(b)(1)(B). *Id.*, at *1. The court ultimately concluded that it lacked

sufficient evidence to resolve that question at the pleading stage and denied the defendant's

motion to dismiss. *Id.* In rendering this decision, the *Bank* court stated in a footnote:

For example, the only protection that business telephone lines receive under § 227 is a prohibition on the use of "an automatic telephone dialing system in such a way that two or more telephone lines of a multi-line business are engaged simultaneously." 47 U.S.C. § 227(b)(1)(D). , in *dicta*,

*Id.*, at *8, n.2. This statement, on which CM relies, is clearly *dicta*, as it was unrelated to the

issue before the court at that time. The *pro se* plaintiff in *Banks* did not offer any arguments as

-21-

to whether Section 227(b)(1)(A)(iii) applies to business lines.  This Court, therefore, should not rely on *Banks* as a basis for resolving that question.

The courts in *Warnick* and *TSC v. Trading Advantage* squarely addressed the question rasied by CM's motion to dismiss and held that Section 227(b)(1)(A)(iii) applies to TSC's business telephone numbers.  This Court should adopt the reasoning of those cases.

**F.    TSC has not waived its right to bring the instant TCPA action against CM.**

In its motion to dismiss, CM argues that because TSC purchased telephone numbers with knowledge that robocallers would place illegal robocalls to those numbers, TSC waived its right to bring a TCPA action against CM.  (*See* Motion to Dismiss, pp. 15-18.)  Waiver, however, is an affirmative defense, which CM, as the defendant, must plead and prove.  *See* Fed. R. Civ. P. 8(c)(1); *see also United States v. Halpern*, 2015 U.S. Dist. 135361, *10 (E.D.N.Y. Oct. 5, 2015) (defendant obligated to plead and prove its affirmative defense).  TSC is not required to "plead around" CM's affirmative defense.  *See St. John's Univ. v. Sanford M. Bolton*, 757 F. Supp. 2d 144, 157 (E.D.N.Y. 2010) ("the Supreme Court's opinion in [*Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955 (2007)] 'did not revise the allocation of burdens concerning affirmative defenses,' and restating the rule that 'complaints need not anticipate, and attempt to plead around, potential affirmative defenses'") (*quoting Davis v. Ind. State Police*, 541 F.3d 760, 763 (7th Cir. 2008).  Unless the FAC, on its face, establishes that TSC waived its claims against CM, this Court should not dismiss this action on the basis of that defense.  *See St. John's Univ.*, 757 F. Supp. 2d, at 157.

"Under New York law, '[t]o establish waiver, it is necessary to show that there has been an intentional relinquishment of a known right with both knowledge of its existence and an intention to relinquish it.'" *Coggins v. Cnty. of Nassau*, 615 F. Supp. 2d 11, 29 (E.D.N.Y. 2009) (*quoting Airco Alloys Division, Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 81,

430 N.Y.S.2d 179 (N.Y.S. App. Div. 4th Dep't 1980)).  In this case, the allegations in the FAC do not establish a waiver.  All of the robocalls at issue in this case were placed *after* TSC acquired its telephone numbers.  TSC never provided its telephone numbers to CM and never invited CM to call any of those telephone numbers.  TSC only became aware that CM was robocalling TSC's telephone numbers *after* the illegal robocalls were placed and TSC analyzed its data related to those calls.  TSC has never communicated to CM that TSC consented to the robocalls or that TSC did not intend to pursue a TCPA claim based on those robocalls.  Based on these allegations, there can be no "intentional relinquishment of a known right with both a knowledge of its existence and an intention to relinquish it."

As the Supreme Court held in *Havens Realty*, *supra*, a plaintiff may voluntarily interact with a business that is already engaged in wrongdoing in order to bring a claim against that business to enforce a consumer protection law.  Under the TCPA, a private citizen has no obligation to avoid illegal robocalls before filing a lawsuit based on the defendant's violation of the statute.  *See Fitzhenry*, 2014 U.S. Dist. LEXIS 166243, at *12.  Moreover, the TCPA does not require called parties to immediately notify robocallers that they are violating the law.  *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, Declaratory Ruling and Order, adopted June 18, 2015, p. 51, ¶ 95.  There is no basis, therefore, to assert that TSC waived its claims against CM.

### G.     TSC Has Not Violated the New York State Law Prohibition on Champerty.

New York Judiciary Law § 489 (known as the "champerty statute") provides, in part:

> no corporation or association, directly or indirectly, itself or by or through its officers, agents or employees, shall solicit, buy or take an assignment of, or be in any manner interested in buying or taking an assignment of a bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand, with the intent and for the purpose of bringing an action or proceeding thereon.

In the instant case, the New York champerty statute is not violated because TSC has not bought or taken by assignment any "bond, promissory note, bill of exchange, book debt, or other thing in action, or any claim or demand."  Instead, TSC has brought an action based solely on robocalls that CM placed to TSC telephone numbers **after** TSC acquired those numbers.  TSC did not purchase or take by assignment any "action, or any claim or demand," that some other party may have had against CM based on past events or activities .

> Moreover, this Court has previously held:
>
> The New York champerty statute is only violated if the "primary purpose of the purchase or taking by assignment of the thing in action" is to bring a lawsuit thereon. *Sprung v. Jaffe*, 3 N.Y.2d 539, 147 N.E.2d 6, 9, 169 N.Y.S.2d 456 (N.Y. 1957). Indeed, the New York Court of Appeals has stated that "the purchase must be made for the very purpose of bringing such suit, and this implies an exclusion of any other purpose." *Moses v. McDivitt*, 88 N.Y. 62, 65 (1882); *see also Bluebird Partners, L.P. v. First Fid. Bank, N.A.*, 94 N.Y.2d 726, 731 N.E.2d 581, 587, 709 N.Y.S.2d 865 (N.Y. 2000) ("[T]he foundational intent to sue on that claim must at least have been the primary purpose for, if not the sole motivation behind, entering into the transaction."). If the intent to sue was merely "incidental and contingent" to the purpose of the assignment, an action for champerty will not lie. *Bluebird Partners*, 731 N.E.2d at 586 (quoting *Moses*, 88 N.Y. at 65). The question of the intent and purpose of an assignee is generally one of fact to be decided by the trier of the facts. *Sprung*, 147 N.E.2d at 9 (citations omitted); see also *Bluebird Partners*, 731 N.E.2d at 586 ("This Court's jurisprudence demonstrates that while this Court has been willing to find that an action is **not** champertous as a matter of law, it has been hesitant to find that an action **is champertous** as a matter of law." (collecting cases) (emphasis in original)).

*Fragrancenet.com, Inc. v. Fragrancex.com, Inc.*, 679 F. Supp. 2d 312, 328-29 (E.D.N.Y. 2010).

In the instant case, TSC did not acquire its telephone numbers "with the intent and for the purpose of bringing an action or proceeding thereon."  The allegations in the FAC make clear that TSC was formed for the purpose of developing and optimizing the Nomorobo service it makes available to the public.  TSC's acquisition of telephone numbers did not, in itself, provide TSC with any basis for bringing a TCPA claim against CM or any other robocaller.  Instead, it is CM's illegal robocalls that were placed to TSC's telephone numbers without prior express consent that provide the basis for TSC's claims.

Consistent with the holding in *Fragrancenet.com*, this Court should deny CM's motion to dismiss the FAC on the grounds that TSC violated the New York champerty statute.

**III.    CONCLUSION**

For the foregoing reasons, TSC respectfully asks this Court to deny CM's motion to dismiss in its entirety.


                                        RESPECTFULLY SUBMITTED,

                                        Hyslip & Taylor, LLC LPA


                                        By:     /s/ David M. Menditto
                                              One of Plaintiff's Attorneys

Date: December 30, 2015

*Of Counsel*                            *Pro Hac Vice Counsel*
Christopher P. McDonnell, Esq.          David M. Menditto, Esq.
New York Bar No. 5170279                Illinois Bar No. 6216541
146-26 35th Avenue                      1100 W. Cermak Rd., Suite B410
Flushing , NY  11354                    Chicago, IL  60608
(P): (917) 741-1388                     (P) (312) 380-6110
(E) Christopher.Mcdonnell@csi.Cuny.Edu  (F) (312) 361-3509
                                        (E) davidm@fairdebt411.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 30, 2015, I served foregoing Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss in .pdf format via email to the following counsel of record for Defendant:

Mr. Brett A. Scher
Mr. Adam M. Marshall
Kaufman Dolowich & Voluck, LLP
135 Crossways Park Dr., Suite 201
Woodbury, New York 11797
bscher@kdvlaw.com
amarshall@kdvlaw.com

*Counsel for Defendant*

_/s/ David M. Menditto_
David M. Menditto